UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

HOLLY B. DUNCAN              )
                            )
V.                          )              NO. 2:10-CV-215
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of

the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for

disability insurance benefits and supplemental security income were administratively denied

following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the

defendant Commissioner have filed dispositive Motions [Docs. 8 and 12].

The sole function of this Court in making this review is to determine whether the

findings of the Secretary are supported by substantial evidence in the record. *McCormick*

*v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial

evidence" is defined as evidence that a reasonable mind might accept as adequate to support

the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough

to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought

to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607

(1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor

decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even

if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 46 years of age at the time of her alleged disability onset date of June 15, 2007.. She has a limited education. She has past relevant work experience as a cleaner, which is light and unskilled; machine operator, which is light and semi-skilled; packager, which is medium and unskilled; hotel desk clerk, which is light and semi-skilled; and as a sales clerk, which is light and unskilled. (Tr. 66).

Plaintiff's medical history is summarized in the plaintiff's brief as follows:

Plaintiff presented to Cherokee Physical Therapy for initial evaluation on January 22, 2008, upon referral by Dr. Bearden. Plaintiff was noted to have a long-standing history of cervical, back, and left hip discomfort; to be having increased difficulty with primarily low back pain and increased left hip and lower extremity radiating pain; to not be sleeping well with general aches and pains throughout her neck and low back; to be noting increased catches in her left low back and buttock region; and to be having some radiating discomfort in the upper and lower extremities. The assessment was status post motor vehicle accident with possibility of acute onset of increased left low back and left hip area discomfort (Tr. 258-262).

Plaintiff was admitted to Holston Valley Medical Center from February 19, 2008 through February 27, 2008, after she presented with a two week history of worsening cough and shortness of breath. The final diagnoses upon discharge were bilateral pneumonia versus ERDS versus noncardiogenic pulmonary edema, resolving; respiratory stress secondary to #1, resolved; hypertension; depression; and tobacco use disorder (Tr. 263-276).

On March 19, 2008, Plaintiff underwent consultative exam by Roy Nevils, Ph.D. Presenting problems included chronic pain, anxiety, panic attacks, and depression. Plaintiff was crying throughout the whole evaluation; she did serial 7 subtractions with three errors, one of which she was unable to correct; and in spelling the word "WORLD" backwards, she transposed the O and the R. In conclusion, Dr. Nevils noted Plaintiff appears to have decompensated into major depression since the death of her mother; as a result, she has markedly withdrawn from social interaction; judging by the mental status evaluation, there could be moderate problems with concentration; and she also reports some problems with anxiety attack that may reach the level of panic attacks at times. The diagnoses were major depressive disorder, anxiety attacks, and nicotine

addiction (Tr. 277-283).

Plaintiff underwent consultative exam by Dr. Wayne C. Page on March 27, 2008. Presenting complaints included thoracic and lumbar pains, left leg and foot pain, panic attacks, anxiety, depression, ulcer disease, generalized headaches, and chest pain. Exam was remarkable for obesity and the diagnosis was musculoskeletal back and lower extremity pain. Dr. Page opined Plaintiff has no impairment-related physical limitations, but is not capable of managing financial affairs, due to pain behaviors and significant doses of controlled substances for muscloskeletal pain (Tr. 298-302).

Dr. M. Arif Shaikh treated Plaintiff from February 26, 2008 through April 10, 2008. Conditions and complaints addressed include bilateral lung infiltrate, atypical cell suspicious for adenocarcinoma on bronchoscopy, possible right breast nodule, tobacco dependence, history of noncardiogenic pulmonary edema, benign bone lesion, and anxiety (Tr. 284-297, 303-315).

On April 25, 2008, a reviewing state agency psychologist opined Plaintiff is markedly limited in her ability to interact appropriately with the general public and to respond appropriately to changes in the work setting. Plaintiff was noted to be moderately limited in her ability to understand, remember, and carry out detailed instructions; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 316-333).

Dr. Ronald B. Simmons treated Plaintiff from June 28, 2006 through May 27, 2008. Problems noted during treatment include neck pain, headaches, lower back pain, anxiousness, insomnia, sleep apnea, stress, tingling/burning/numbness in the hands and arms, chronic airway obstruction, degenerative disc disease, cough, bilateral leg pain, restless legs syndrome, grief, panic attacks, hyperlipidemia, and swelling in the lower extremities. Physical exams were consistently remarkable for neck stiffness, decreased cervical lordosis, increased thoracic kyphosis, crepitations in the hands/wrists and ankles/feet, anxious appearance, increased expiratory phase in the lungs, and coarse breath sounds and rhonchi in the lungs (Tr. 338-384). On November 2, 2006, cervical spine x-rays showed narrowing at C5/6 with mild anterior and posterior spondylosis, as well as some straightening of the cervical spine as would be seen in muscle spasm. Lumbar spine x-rays showed sclerosis in the facet joints at L4/5 and L5/S1, with mild anterior spurring at several levels (Tr. 381-384).

Plaintiff received treatment at Bearden Healthcare Associates from July 24, 2007 through June 4, 2008. Conditions and complaints addressed include low back pain radiating into the lower extremities, restless leg syndrome, headaches, depression, sleep disturbance, anxiety, auditory hallucinations, neck pain radiating into the left arm, and bilateral knee pain with swelling and popping. Exams were remarkable for frequent crying, decreased cervical range of motion, decreased lumbar range of motion, positive straight leg raise on the left, and cervical spine tenderness (Tr. 385-420).

On August 1, 2008, a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform

3

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 425-442).

Plaintiff presented to Frontier Health on September 8, 2008. Presenting symptoms included indecisiveness, racing thoughts, decrease in energy or fatigue, social withdrawal, anxiety, fear of separation, panic attacks, avoidance behavior, somatization, worrying, diminished ability to think, distractibility, memory impairment, poor attention or concentration, recurrent recollection of distressing events, decreased appetite, hallucinations, anger, blunted or flat affect, depressed mood, excessive or inappropriate guilt, feeling worthless, helplessness, hopelessness, irritability, loss of interest or pleasure, low self-esteem, tearfulness, and insomnia. The diagnoses were major depressive disorder, severe, and generalized anxiety, with a current global assessment of functioning [hereinafter "GAF"] of 48, a highest last six months GAF of 50, and a lowest last six months GAF of 48 (Tr. 443-445, 460-463).

On October 20, 2008, LCSW Feagins opined Plaintiff has no useful ability (poor/none) to follow work rules; deal with public; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; relate predictably in social situations; or demonstrate reliability. Plaintiff's ability to function was noted to be seriously limited, but not precluded (fair) in the areas of relate to coworkers; use judgment with the public; function independently; understand, remember, and carry out simple or detailed job instructions; and maintain personal appearance (Tr. 446-447).

Plaintiff continued treatment at Frontier Health, by LCSW Feagins, from October 14, 2008 through December 1, 2008. During this time, Plaintiff was suffering frequent crying, auditory hallucinations, depression, thoughts of giving up, family relational problems, and grief. Plaintiff cried profusely during exams; her mood consistently appeared very depressed; and inpatient treatment was discussed on several occasions (Tr. 455-463).

Plaintiff received treatment at Hawkins County Memorial Hospital on three occasions from December 18, 2007 through January 31, 2008, due to neck pain, low back pain radiating into the left leg, and headache (Tr. 464-491). On December 18, 2007, cervical spine x-rays showed discogenic degenerative change at C5-6 and incidental note of small cervical ribs (Tr. 473). On January 30, 2008, MRI of the lumbar spine showed mild broad based disc bulging at L1-2 and L4-5, mild facet joint arthropathy, and incidentally noted fatty infiltration of the filum (Tr. 490-491).

Plaintiff's academic records show that she dropped out without completing the eighth grade (Tr. 492-498).

On February 2, 2009, LCSW Feagins opined Plaintiff has no useful ability (poor/none) to follow work rules; relate to coworkers; deal with public; use judgment with the public; interact with supervisors; deal with work stresses; function independently; maintain attention and concentration; understand, remember, and carry out job instructions; behave in an emotionally stable manner; relate predictably in social

situations; or demonstrate reliability. Plaintiff's ability to maintain personal appearance was noted to be seriously limited, but not precluded (fair) (Tr. 499-501).

Plaintiff continued treatment at Bearden Healthcare Associates from August 4, 2008 through July 1, 2009, during which time she was suffering chronic low back pain radiating into the lower extremities, bilateral knee pain, anxiety, worsening depression, sleep disturbance, muscle spasms, chronic neck pain, and bilateral lower extremity venous insufficiency (Tr. 503-541, 561-578). Plaintiff was given a prescription for a cane on October 2, 2008 (Tr. 600-601).

On April 8, 2009, Plaintiff underwent her second consultative exam by Roy Nevils, Ph.D. Presenting problems included crying spells, anger, anxiety, panic attacks, depression, history of suicide attempts, hallucinations, paranoia, and history of childhood abuse. Plaintiff cried throughout most of the interview; she was disoriented; and her insight was limited. WAIS-III testing yielded a Verbal IQ score of 66, a Performance IQ score of 62, and a Full Scale IQ score of 61. WRAT-IV testing revealed a 4.0 grade equivalent word reading level and a 3.2 grade equivalent math computation level. In summary, Dr. Nevils noted that, although Plaintiff reports an increase of depression and anxiety complaints since the death of her mother over a year ago, it is likely that she has had problems of this sort most of her life, reporting an abusive stepfather and two suicide attempts in her early ten years, and the intellectual assessment is considered to be an underestimate of her capacity, given her history of at least borderline adaptive level of functioning in that she has in the past been able to hold down jobs and manage a household. The diagnoses were depressive disorder, not otherwise specified; anxiety attacks; malingering; and borderline intellectual functioning; with a GAF of 60. Dr. Nevils opined Plaintiff is moderately limited in her ability to understand, remember, and carry out complex instructions; to make judgments on complex work-related decisions; and to interact appropriately with the public, supervisors, and coworkers (Tr. 547-556).

Plaintiff underwent initial psychiatric evaluation at Frontier Health on March 18, 2009, upon referral by her therapist. Plaintiff reported that she had been grieving over her mother's death for two years; that she relives the death daily; that she has auditory hallucinations of her mother's breathing right before she died; and that she has had visual hallucinations of her mother's shadow. Plaintiff reported depression, sadness, crying spells, anxiety, panic, poor energy, poor sleep, poor motivation, lack of interest, and isolation from others. Dr. Naramore diagnosed major depression with psychotic features and generalized anxiety disorder (Tr. 557-560).

Plaintiff continued treatment at Frontier Health, by LCSW Feagins, from January 9, 2009 through July 2, 2009 (Tr. 579-587, 597-599). On January 9, 2009, Plaintiff reported that she stays in bed all the time, has no interest in anything, continues to hear her mother's breathing, did not feel like going on a lot of the time, and had suffered a recent episode of intense depression during which her daughter thought she was losing her mind (Tr. 587). By April 7, 2009, Plaintiff had suffered a "mad fit" in which she broke pictures and threw things on the floor of her bedroom; she was still crying daily; she continued to have auditory and visual hallucinations; she remained anxious and sad; her mood appeared quite distraught; and she cried almost throughout the session (Tr. 583). On May 14, 2009, Plaintiff was suffering depression with passive suicidal ideation; she was tearful in the office and described depression, decreased energy, and lack of motivation; she continued to suffer grief related to her mother's death about two years

5

prior; and she reported poor sleep, decreased short term memory, anxiety, and occasional panic attacks (Tr. 581).

By June 17, 2009, Plaintiff was having a family member staying with her all the time because of her increased depression and their concerns for her safety; she wished she could die; she cried profusely while discussing her history of childhood sexual abuse; and she continued to grieve over her mother's death. Plaintiff's mood appeared very depressed; she was crying/sobbing; and she had difficulty keeping her thoughts organized several times, forgetting what she was saying several times (Tr. 580). On June 18, 2009, Plaintiff was crying in the office as she complained of ongoing depression, hearing voices, and seeing shadows. Plaintiff's concentration appeared to be decreased; her mood was depressed; and her affect was flat. A trial of Abilify was agreed upon to target resistant depressive symptoms and psychosis (Tr. 599). On July 2, 2009, Dr. Naramore increased Ability to target continued auditory and visual hallucinations (Tr. 597).

On June 23, 2009, LCSW Feagins opined Plaintiff has no useful ability (poor/none) to follow work rules; relate to coworkers; deal with public; use judgment with the public; interact with supervisors; deal with work stresses; function independently; maintain attention and concentration; understand, remember, and carry out job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; or demonstrate reliability (Tr. 593-595).

[Doc. 13, pgs. 2-9].

The Court also notes that Dr. Nevils opined from the testing of the plaintiff at this examination that "the probability of feigning is considered to be 100%." Every test which he administered which measured exaggeration of symptoms or feigning indicated a "strong likelihood" of this being the case. (Tr. 550-51).

Also, as noted by the Commissioner, pharmacy records from P&S Pharmacy from May 2008 through December 2008 showed "that plaintiff used many different pain medications and narcotics, and in only 7 months time, paid over $13,650.00 for these drugs (Tr. 453-454). Records indicate Plaintiff spent nearly $3,000.00 at Greene's Pharmacy and indicates she paid for these prescriptions in cash (Tr. 544-545). In June 2008, Plaintiff admitted to taking more pain medication than was prescribed (Tr. 528)." [Doc. 13, Pg 6].

A supplemental hearing was held to give further opportunity for the ALJ to obtain

more psychological evidence, which resulted in Dr. Nevil's second exam and assessment discussed above. At the supplemental hearing Dr. Edward Griffen testified as a medical expert regarding plaintiff's physical problems and Dr. Thomas Schacht testified regarding the plaintiff's psychological impairments. Dr. Griffen stated that her medical records were "troublesome for inappropriate use of narcotics." He noted plaintiff had told Dr. Nevils she bought drugs off the street, and that she had "overlapping prescriptions from multiple pharmacies." He opined she was "capable of doing a full range of medium work." (Tr. 24-25).

Dr. Schacht was asked by the ALJ whether he had "an opinion as to whether the claimant meets or equals a listed impairment or has a severe psychological disorder which causes work-related restrictions ..." (Tr. 28). Dr. Schacht replied that "the record contains inconsistencies, evidence of malingering and evidence of narcotic abuse and/or diversion." He then points to inconsistent statements she gave medical doctors as opposed to those she gave mental health contacts, and false statements regarding drug and alcohol use. (Tr. 28-31). He also cast doubt on the accuracy of Social Worker Feagins opinions, closing by saying "you have to consider the hypothesis that this is an individual who is staying out of the hospital despite those kind of complaints because it would disrupt access to drugs." (Tr. 31-32).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of a back disorder and restless leg syndrome. He found that her asserted impairments of lung problems, blood pressure problems, headaches, depression and anxiety "impose no more than minimal limitations" and were thus, not severe impairments. (Tr. 13).

With respect to her mental impairments, he recounted some of her records. He went into great detail regarding Dr. Schacht's testimony regarding the plaintiff's use and abuse of medications. He pointed out false statements she had made to Dr. Nevils about her past alcohol and drug use. He then talked about Dr. Schacht testifying "that no useful information resulted from the consultative psychological evaluation by Dr. Nevils...," due to the scores on the tests which indicated malingering. Also, he related the problems Dr. Schacht had with Social Worker Feagins' opinions. (Tr. 14-16). The ALJ then stated that he found that the plaintiff had no more than mild limitations in activities of daily living; social functioning and in concentration, persistence or pace. (Tr. 17).

He then recounted the evidence regarding her physical impairments, including the opinions of Dr. Page, the consultative examiner, and Dr. Griffin, who reviewed the records and testified at the hearing. He then found that she was capable of the full range of medium work. He then found the plaintiff to not be completely credible. (Tr. 18-19).

The ALJ then evaluated the opinion evidence. He gave the "greatest weight" to the opinion of Dr. Griffin. He likewise gave "great weight to the testimony of Dr. Schacht which is credible, reliable and consistent with the documentary evidence of record..." He gave little weight to the opinions of Ms. Feagins, Dr. Nevils and the State Agency psychologists "that the claimant has moderate and marked limitations in mental functioning..." because they were "inconsistent with the claimant's treatment history, her activities and...the testimony of Dr. Schacht." To leave no doubt of the basis for his opinion on RFC, the ALJ reiterated "based on the documentary evidence of record and the opinion of Dr. Griffin and the testimony of Dr. Schacht..." he found her capable of the full range of medium work with "no

8

severe mental limitations in mental functioning." (Tr. 19-20).

He then found that the plaintiff was capable of returning to all of her past relevant jobs. Accordingly, she was not disabled. (Tr. 20-21).

The plaintiff's only argument regarding the physical RFC is that the ALJ did not factor in her use of a cane. The Court finds that the opinions of Dr. Page, Dr. Griffin and the State Agency consultants provide substantial evidence for the RFC finding that the plaintiff is capable, exertionally, of a full range of medium work.

Plaintiff also argues that the ALJ erred in finding that the plaintiff did not have a severe mental impairment. The Court agrees.

Each and every examining and non-examining source who provided an opinion regarding the plaintiff's mental status opined that she had depression which caused at least moderate limitations. Doctor Schacht was asked by the ALJ at the start of his testimony if the plaintiff met or equaled a listed impairment or had a severe psychological disorder which would cause work-related restrictions. (Tr. 28). The problem is, Dr. Schacht never answered that question. Instead, he provided compelling evidence that the plaintiff was less than credible and was abusing narcotics and medications for her depression and saying whatever she needed to say to get them. The problem is he never did state his own opinion that the plaintiff had no severe mental impairment. It is highly likely that Dr. Schacht, had he but answered the question, would have said that plaintiff had no severe mental impairment unrelated to her drug abuse. But a guess is no substitute for proof.

In that regard, this case is eerily similar to, but distinguishable from, another case which involved this ALJ, Dr. Schacht, and a plaintiff who was obviously abusing

9

prescription narcotics. *See, Barbara Jean Mooney v. Commissioner of Social Security*, No. 2:11-CV-56. In that case however, Dr. Schacht clearly opined that any reliable diagnosis of an underlying mental health condition could not be reached as long as that plaintiff continued using drugs, and that the drug usage would greatly exacerbate any extant mental condition she might have. In the present case, however, Dr. Schacht did not so opine. His opinions were that this plaintiff is a drug abuser and a liar, and he did his homework to back up them up. However, in the absence of at least one opinion from a mental health source that the plaintiff did not have a severe mental impairment, the ALJ's finding of RFC for the full range of medium work is not substantially justified. Without such a contrary opinion, at the least the de minimis hurdle has been met by the plaintiff.

The Court has very little doubt that if the vocational expert, who was present at the supplemental hearing (Tr. 22), had been asked to assume that the plaintiff had the moderate mental limitations opined by Dr. Nevils, or the State Agency examiners, she would have either have opined that the plaintiff could return to some of her past relevant jobs, or could perform a substantial number of other jobs in the national economy. This course was not pursued, and substantial evidence at present does not exist to support the ALJ's RFC finding or his finding that the plaintiff can perform her past relevant work.

The Court certainly does not believe the plaintiff has established that she entitled to a judicial award of benefits. Instead, it is respectfully recommended that the case be remanded for further development regarding her alleged mental impairments, and the use of a vocational expert if necessary to determine if jobs exist which she can perform. To this end, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc.

8] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be DENIED.[1]


Respectfully submitted:


 s/ Dennis H. Inman
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).